IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.: 8:20-CR-30 |
| | ) |
| EDWAR RODRIGUEZ, | ) |
| CHRISTIAN SANTIAGO RONDON, | ) |
| VICTOR SANTIAGO RONDON, | ) |
| | ) |
| Defendants. | ) |

**ELECTRONICALLY RECORDED**
**INITIAL APPEARANCE, ARRAIGNMENT, BOND/DETENTION PROCEEDINGS**
**BEFORE THE HONORABLE ANTHONY E. PORCELLI**

**January 27, 2020**
**4:29 p.m. to 4:52 p.m.**

**APPEARANCES:**

**FOR THE PLAINTIFF:**  MICHAEL M. GORDON, ESQUIRE
United States Department of Justice
Office of the United States Attorney
400 North Tampa Street
Suite 3200
Tampa, Florida 33602

**FOR THE DEFENDANT:**  TIMOTHY J. FITZGERALD, ESQUIRE
Farmer & Fitzgerald, PA
400 North Tampa Street
Suite 2840
Tampa, Florida 33602

**FOR THE DEFENDANT:**  FRANKLYN LOUDERBACK, ESQUIRE
Law Office of Franklyn Louderback
450 Carillon Parkway
Suite 120
St. Petersburg, Florida 33716

**ALSO PRESENT:**  EDWAR RODRIGUEZ, DEFENDANT
CHRISTIAN SANTIAGO RONDON, DEFENDANT
VICTOR SANTIAGO RONDON, DEFENDANT

(Proceedings recorded by electronic sound recording, transcript
produced by computer-aided transcription.)

**TRANSCRIBED BY:**
Rebekah M. Lockwood, RDR, CRR
Official Court Reporter
(813 ) 317-8286 | r.lockwooduscr@gmail.com
P.O. Box 173496, Tampa, Florida 33672

1          THE COURTROOM DEPUTY:  United States of America

2    versus Edwar Rodriguez, Christian Santiago Rondon, Victor

3    Santiago Rondon, Criminal Case No. 8:20-CR-30-T-36TGW.

4          THE COURT:  All right.  Let me have counsel state

5    your appearances for the record on behalf of the United States.

6          MR. GORDON:  Good afternoon, Your Honor.  Mike Gordon

7    on behalf of the United States.

8          THE COURT:  Thank you, Mr. Gordon.

9          All right.  Which one is you is Mr. Rodriguez?  All

10   right.  Thank you, sir.  Good afternoon.

11         DEFENDANT RODRIGUEZ:  Good afternoon.

12         THE COURT:  And Mr. Christian Santiago Rondon?  All

13   right.  Thank you, sir.  Good afternoon.

14         DEFENDANT C. SANTIAGO RONDON:  Good afternoon, sir.

15         THE COURT:  I guess that means you are Victor

16   Santiago Rondon.  Thank you.

17         All right.  Gentlemen, you've been brought here based

18   upon an indictment that's been filed against each of you, and I

19   want to summarize the sole charge against you in the

20   indictment.

21         Count 1 of the indictment alleges that beginning on

22   unknown date, but no later than on or about January 1st of

23   2018, and continuing through on or about April 23rd of 2019, in

24   the Middle District of Florida and elsewhere, each of you and

25   other named codefendants did knowingly and willfully conspire

                    UNITED STATES DISTRICT COURT

1    with each other and other persons, both known and unknown, to

2    possess with intent to distribute and to distribute a

3    controlled substance.  Namely, the controlled substances

4    alleged include 50 grams or more of methamphetamine, a mixture

5    or substance containing a detectable amount of cocaine, and,

6    lastly, a mixture or substance containing a detectable amount

7    of heroin.  This conspiracy is alleged to be in violation of

8    Title 21 United States Code Sections 846, as well as

9    Title 21 United States Code Section 841(b)(1)(A)(viii) and

10   (b)(1)(C).

11        Gentlemen, in connection with the charge against you,

12   you have a number of rights.

13        You have the right to be represented by a lawyer at

14   all stages in the case.  And if you cannot afford to hire a

15   lawyer, the Court will appoint one to you at no cost to you to

16   represent you throughout the entirety of the case.  I reviewed

17   each of your financial circumstances and find it appropriate to

18   appoint each of you a lawyer, if that's what you want me to do.

19        So let me just start in the order that you are

20   seated.

21        Mr. Rodriguez, do you want me to appoint a lawyer to

22   represent you in the matter?

23        DEFENDANT RODRIGUEZ:  Yes, sir.

24        THE COURT:  All right.  So that is Mr. Fitzgerald

25   seated there next to you.  We've asked him to be present here

```
1    today in anticipation of appointment to your case.

2              Mr. Fitzgerald, for the record, do you accept the

3    appointment?

4              MR. FITZGERALD:  Yes, Your Honor.

5              THE COURT:  All right.  Thank you for your time.  So

6    Mr. Fitzgerald is going to be representing you throughout the

7    entirety of the case.

8              Do you understand that?

9              DEFENDANT RODRIGUEZ:  Yes, sir.

10             THE COURT:  All right.  Mr. Christian Santiago

11   Rondon, sir, do you want me to appoint a lawyer to represent

12   you in the matter?

13             DEFENDANT C. SANTIAGO RONDON:  Yes, sir.

14             THE COURT:  All right.  So that is Mr. Louderback

15   seated there next to you.

16             Mr. Louderback, for the record, do you accept the

17   appointment?

18             MR. LOUDERBACK:  I do, Your Honor.  Thank you.

19             THE COURT:  Thank you.  So Mr. Louderback is going to

20   be representing you throughout the entirety of the matter.

21             Do you understand that, sir?

22             DEFENDANT C. SANTIAGO RONDON:  Yes, sir.

23             THE COURT:  Mr. Victor Santiago Rondon, sir, do you

24   want me to appoint a lawyer to represent you, sir?

25             All right.  So Mr. Ciaravella is seated there right
```

UNITED STATES DISTRICT COURT

1    next to you.

2           Mr. Ciaravella, for the record, do you accept the

3    appointment?

4           MR. CIARAVELLA:  Yes, Your Honor.  Thank you.

5           THE COURT:  Thank you for your time.

6           So he'll be representing you throughout the entirety

7    of the matter as well.

8           Do you understand that, sir?

9           Gentlemen, it's very important that you understand

10   that in no way are you required to make any statements to

11   anyone about this charge that's been filed against you.  If you

12   start -- have started any statements with anyone, to

13   specifically include any conversations with law enforcement

14   about the charge, you do not have to continue those statements,

15   and you can stop them at any time.

16          It is vital you understand that outside any

17   statements you make to your attorney about the charge, any

18   statements you make to anyone else about the charge can and

19   will likely be used against you in the prosecution.

20          Do you each understand that?

21          DEFENDANT RODRIGUEZ:  Yes.

22          DEFENDANT C. SANTIAGO RONDON:  Yes, sir.

23          THE COURT:  All right.  You have the right to have

24   the matter of bond to be taken up by the Court.  I'm prepared

25   to consider that matter today.

                    UNITED STATES DISTRICT COURT

1        What is the government's position, starting in the

2   order they are seated, with Mr. Rodriguez first?  What's the

3   government's position as the bond?

4        MR. GORDON:  Your Honor, for each of the three

5   defendants, the United States is requesting home incarceration.

6   The -- the presumption is triggered by the charge that's on the

7   indictment, as well as the fact that it carries a ten-year

8   mandatory minimum.  That being said, if each of the three

9   defendants chooses to proffer, because of their criminal

10  records, they won't be -- they would be safety valve eligible.

11       The -- to understand the United States' request here

12  for home incarceration as opposed to detention, I think it's

13  necessary to explain a little bit about this case.  These

14  defendants are essentially the delivery people or the errand

15  men for a large-scale drug-trafficking organization that is one

16  step from Mexico.

17       So in Spring Hill, Florida, there are two men, named

18  Juan Carlos Arias Castillo and Adan Barajas Maldonado, who were

19  receiving 30 kilos or more of methamphetamine at a time, as

20  well as cocaine from Mexico.  They'd get it in Spring Hill, and

21  they would distribute it to kilogram-level distributors in

22  Spring Hill, such as the two last names on this indictment

23  Jorge Ramirez and Carlos Martinez.

24       Those two, the heads of that drug-trafficking

25  organization, have already been indicted and pled guilty.

UNITED STATES DISTRICT COURT

1    They're both pending sentencing.  The three men seated here at

2    defense table are the people that the traffickers, the cartel

3    traffickers, would task with delivering the methamphetamine to

4    their customers, or once payment was received, these three were

5    tasked with taking that money, going to Western Union and

6    wiring it back to Michoacan, Mexico, or finding other people,

7    regular folks, who would be willing to send a wire like that in

8    exchange for a couple hundred dollars.  These guys were the --

9    that's why I refer to them as delivery men or the errand

10   runners for these traffickers.

11           It's my understanding, from speaking with the agents,

12   that once those two primary traffickers were arrested -- and

13   that's the date on the indictment, April 23rd, 2019, that's the

14   date of the search warrant of the stash house and the arrest --

15   that these three are essentially out of the drug business.

16   Whether or not they were -- those were their, essentially,

17   employers, and they haven't latched on to other people.

18           So I -- while they participated in an organization

19   that was moving more than 200 kilograms a year of

20   methamphetamine -- it's a massive trafficking organization here

21   in Spring Hill -- they haven't really done it in the last six

22   months or more, I guess.  It's been a little more than that at

23   this point, eight months.  So I don't think they are at the

24   same level of danger to the community they were before.

25           THE COURT:  So explain, then, why home incarceration.

1          MR. GORDON:  So the time that they're facing is such

2    that, you know, something between -- you know, there's an

3    incentive to flee regardless, so I'm looking for something

4    between a straight bond and detention, and that leads us to

5    home detention versus home incarceration.  And then it just

6    depends on, you know, what rationales they might have to leave

7    the home at that point and what their dangerousness is.

8          I don't see other dangerousness, and I don't see

9    other risk of flight, because at least for the Santiago Rondon

10   brothers, they don't have criminal records, and Edwar

11   Rodriguez's record is fairly minor compared to what we often

12   see in Court.

13         Frankly, it was just -- I defaulted to home

14   incarceration, given the --

15         THE COURT:  Potential [unintelligible].

16         MR. GORDON:  -- potentially the fact that we would

17   usually in this kind of case ask for detention, but there was a

18   reason to ratchet back, but I could see a rationale for

19   ratcheting back even further to home detention.  But I think

20   that the risk of flight is just driven by the motivation to

21   flee the charges.  That's all.

22         THE COURT:  All right.  Thank you.

23         All right.  Mr. Fitzgerald, are you prepared to go

24   forward today as to Mr. Rodriguez?

25         MR. FITZGERALD:  Yes, Your Honor.

1          THE COURT:  All right.

2          MR. FITZGERALD:  Judge, he'd like to be released,

3   obviously.  And if he has to be home incarcerated, he'd do

4   that.  If there's another way to fashion it, his sister owns a

5   home in Spring Hill where he lives, and she's willing to put up

6   a property bond on the home.  She thinks she has at least a

7   hundred thousand dollars worth of equity in the home.

8          And she is employed as a parole officer with the

9   Florida Department of Corrections, and she's agreed to

10  third-party custodian, and said she most certainly will call

11  pretrial services if he is not acting in accordance with the

12  Court's release orders.

13         Her name is Elizabeth Rodriguez, and she lives

14  where -- he actually lives with her at 11145 Sheffield Road,

15  Spring Hill, Florida.

16         THE COURT:  And she's willing to have him return to

17  the residence?

18         MR. FITZGERALD:  Yes.

19         THE COURT:  All right.  Okay.  Thank you.  Anything

20  else?

21         MR. FITZGERALD:  No, sir.

22         THE COURT:  All right.  Mr. Louderback, are you

23  prepared to go forward today?

24         MR. LOUDERBACK:  Yes, Your Honor.  And I would also

25  ask for home detention.  My client has no prior record,

UNITED STATES DISTRICT COURT

1   although he was arrested previously on a misdemeanor battery

2   charge in Spring Hill.  He went through the pretrial

3   intervention program, and that was subsequently dismissed.

4   Other than that, he has no prior record.  He's been in the

5   Spring Hill community for quite some time.  He lives with his

6   parents.  He has not been able to reach out to them.

7           I don't know the situation, as far as whether or not

8   they would agree to any kind of a property bond, but both of

9   their sons are here.  Both of them live with them.  I'm sure

10  that one or both of them would agree to act as third-party

11  custodians.

12          THE COURT:  Thank you, Mr. Louderback.

13          Mr. Ciaravella, are you prepared to go forward?

14          MR. CIARAVELLA:  Yes, Your Honor.  Your Honor, I'm

15  asking for a release, Your Honor, with the minimum conditions

16  that would be appropriate in this case.  And I guess it --

17  really, I think as the government seems to concede, he's not

18  the typical person that's here on a serious case as this.

19          For one, he's full-time employed.  He works 40 hours

20  a week at a place he's been at about three years.  He has a

21  daughter that is about to turn three this Friday, who lives

22  with him, along the mother, the daughter live in the house with

23  the two parents, and his brother who's here.

24          So he has things to do.  I mean, he has to work those

25  40 hours.  Home incarceration typically would not

                    UNITED STATES DISTRICT COURT

1   [unintelligible] work.  But he really is working.  He's making

2   money, and he's making money to support his small family.

3          He has no -- never been arrested in his life, Your

4   Honor.  And I think it would be appropriate that he just -- he

5   does have a drug history that needs to be dealt with.  I think

6   that can be dealt with without home incarceration.

7          So certainly if he's allowed to be on pretrial

8   release, or, you know, at the most, home detention with a

9   reasonable curfew where he can go to work and do the things

10  that one has to do when they're a parent, you know, go to the

11  store and those kind of things.

12         THE COURT:  All right.  Thank you.

13         All right.  Having heard the position of the parties,

14  my review of the pretrial services report for each of the

15  defendants, and my consideration of Title 18 United States Code

16  Section 3142, under the statute, the Court is required to

17  consider any statutory concerns of risk of flight or danger to

18  the community.

19         In this circumstance, as the government has outlined,

20  there is a rebuttable presumption, given the nature of the

21  charge, that the defendants be detained pending outcome of the

22  case.

23         However, the government has conceded, given the

24  record for each of the defendants, there can be conditions of

25  release that may be suitable to secure their release.  The

UNITED STATES DISTRICT COURT

1    government has articulated the primary concern is risk of

2    flight, and as such, has suggested home incarceration.

3          Mr. Gordon, I appreciate your careful consideration

4    of the government's concerns along with the statutory concerns,

5    but I'm going to disagree with your conditions as to home

6    incarceration.  I find that there are other conditions of

7    release that I can impose to address the issue of risk of

8    flight.

9          To be very blunt, home incarceration is not much more

10   of a deterrent at times where it comes to risk of flight,

11   because either they're on a monitor -- ankle monitor, and all

12   they do is get a shorter head start if they leave the house

13   when they're not supposed to leave the house as compared to

14   just being on an ankle monitor.

15         So I do find that there are conditions of release

16   that I can impose that address the concern of risk of flight,

17   as well as the concern of dangerousness to the community.

18         So, gentlemen, what that means is, I'm going to issue

19   conditions of release in each of your cases.  I will allow you

20   to be released pending the outcome -- the final outcome of the

21   case.

22         In a moment, I will explain to each of you each one

23   of those conditions.  It's very important you understand the

24   conditions, because if you violate them in any way, the Court

25   is going to issue a warrant for your arrest, and you'll likely

1    be detained pending the outcome of the case.  Additionally, you

2    can be charged with another crime, such as contempt of Court,

3    which would be punishable beyond of the penalties you are

4    facing in this casement.

5           All right.  As to each of you, the standard

6    conditions of release are, first, you are to appear before the

7    Court in accordance with all the Court's notices.  If you fail

8    to appear as required, you can be charged with the crime of

9    failing to appear.

10          Additionally, you cannot, for any reason whatsoever,

11   leave the Middle District of Florida without prior written

12   approval by the Court.  Now, the counties within the Middle

13   District of Florida are going to be in your bond paperwork.  If

14   you have any questions about that, you can discuss that with

15   your attorney.

16          All right.  Mr. Rodriguez, I will direct that you

17   reside at 11145 Sheffield Road -- Road in Spring Hill, Florida.

18   You cannot change that residence without prior Court approval.

19          Christian and Victor Santiago Rondon, I'm going to

20   direct that you reside at 8088 Clipper Court in Spring Hill,

21   Florida, and cannot change that residence without prior Court

22   approval.

23          Gentlemen, I must inform you that you cannot commit a

24   federal, state, or local crime during the period of your

25   release.  If you're otherwise charged with another crime, you

UNITED STATES DISTRICT COURT

 1   must immediately inform the pretrial service agency of that

 2   charge.  Additionally, I must specifically advise you that

 3   federal law prohibits any conduct relating to the intimidation

 4   of any witnesses, jurors, or officers of the Court, or any

 5   conduct that led into the obstruction of the investigation of

 6   your case, namely, any tampering with any victims, witnesses,

 7   or informants or any retaliation against any of those

 8   individuals.  That conduct is also chargeable by a separate

 9   offense and punishable beyond any penalties you are facing in

10   this case.

11           Now, the special conditions I'm going to impose --

12   now, for each of you, these are going to be the same

13   conditions.  First, you are to report to pretrial services, as

14   directed by this agency.  Second, you are to participate in any

15   drug treatment and/or evaluation as directed by pretrial

16   services with the cost to be borne by you, if deemed

17   appropriate by pretrial services.

18           Third, you are to participate in a random urinalysis

19   testing, as directed by pretrial services, again, with the cost

20   to be borne by you, if determined appropriate by pretrial

21   services.

22           Do any of you have a passport?

23           DEFENDANT RODRIGUEZ:  No, I don't.

24           DEFENDANT C. SANTIAGO RONDON:  I don't neither.

25           THE COURT:  All right.  You cannot apply for any

                    UNITED STATES DISTRICT COURT

 1   travel documents during the period of release, and that

 2   specifically includes any passport.

 3              All right.  As for each of you, I'm going to put you

 4   on electronic monitoring, that is, GPS monitoring.  So,

 5   basically, you'll be wearing an ankle bracelet, monitoring your

 6   location.

 7              Further, as to each of you, I'll direct that you not

 8   own or possess any firearms or dangerous weapons.

 9              Are there any firearms at either of the residences

10   that you're located that belong to anybody else?

11              DEFENDANT RODRIGUEZ:  I don't.

12              THE COURT:  All right.  Lastly, as for each of you, I

13   am going to impose a $30,000 signature bond.  Now, this is not

14   going to require you to post any property to secure the bond,

15   but I'm also going to require that the bond be cosigned by a

16   relative.

17              So as for you, Mr. Rodriguez, your sister can cosign

18   the bond.  It's not going to require her either to post any

19   property to secure the bond.

20              DEFENDANT RODRIGUEZ:  Thank you, Your Honor.

21              THE COURT:  But if you violate the conditions in any

22   way, what that means is the government can seek to forfeit any

23   property she owns up to the amount of $30,000.  So, in essence,

24   if you violate the conditions of the bond, you're going to be

25   putting your sister in significant financial jeopardy.

1          DEFENDANT RODRIGUEZ:  Understood, Your Honor.

2          THE COURT:  Anthony?

3          THE PRETRIAL SERVICES OFFICER:  Your Honor, I was

4    just going to ask for clarification on the component for which

5    you'd like to --

6          THE COURT:  I'll come back to that.  I want to

7    discuss that with you.

8          THE PRETRIAL SERVICES OFFICER:  Also, Your Honor,

9    with Mr. Rodriguez, his sister is a state probation officer.

10   They are authorized to carry firearms.

11         THE COURT:  Does she have a firearm?

12         DEFENDANT RODRIGUEZ:  No, Your Honor, she don't.

13         THE COURT:  All right.

14         THE PRETRIAL SERVICES OFFICER:  Thank you.

15         THE COURT:  All right.  All right.  Victor and

16   Christian Santiago Rondon, I'm going to require one of your

17   parents to cosign on the bond.  So, again, you each will be

18   signing this bond in the amount of $30,000.  But whoever signs

19   it will also be obligated that if you violate the conditions in

20   any way, the government can seek to forfeit any property they

21   own up to the amount of $30,000.

22         Do you each understand that?

23         DEFENDANT C. SANTIAGO RONDON:  I understand, Your

24   Honor.

25         THE COURT:  All right.  Having stated those

                    UNITED STATES DISTRICT COURT

1    conditions of release, Mr. Gordon, do you have any other

2    suggested conditions you want me to consider?

3              MR. GORDON:  Other than the Santiago Rondon brothers,

4    Your Honor, who will be, I think, living together, I think it's

5    appropriate for these defendants, given the number of

6    defendants in this case, to have no contact with each other or

7    the other codefendants indictment.

8              THE COURT:  All right.  Anybody want to be heard

9    about that?  Any objections?

10             MR. FITZGERALD:  No objection.

11             MR. LOUDERBACK:  No objection, Your Honor.

12             THE COURT:  All right.  So outside of Victor and

13   Christian Santiago Rondon, obviously, living together,

14   gentlemen, you are not to have any contact with any of the

15   other codefendants in your case.

16             Do you understand that?

17             DEFENDANT C. SANTIAGO RONDON:  Yes, sir.

18             THE COURT:  All right.  Let me just confirm with

19   pretrial then.  The reason why I wanted to leave that open is I

20   wanted GPS monitoring.  At this time, I'm not imposing a

21   curfew.  So just normal GPS monitoring as far as the electronic

22   monitoring.

23             Is what you where are inquiring about?

24             THE PRETRIAL SERVICES OFFICER:  Yes, Your Honor, so

25   it sounds like you're [unintelligible].

                    UNITED STATES DISTRICT COURT

```
 1              THE COURT:  Yes.

 2              THE PRETRIAL SERVICES OFFICER:  Thank you, Your

 3    Honor.

 4              THE COURT:  Do we have that available?

 5              THE PRETRIAL SERVICES OFFICER:  Yes, Your Honor.

 6              THE COURT:  All right.  Yeah.  We can talk about

 7    that.  Thank you.

 8              What's the government's position as to releasing the

 9    defendants today and giving a -- two days for any of the

10    cosigners to come in to cosign on the bond?

11              MR. GORDON:  That's fine, Your Honor.

12              THE COURT:  All right.  So what I'm going to do is

13    draw up the paperwork, and you'll be released today.  But what

14    I'm going to require is, those who are going to come in and

15    cosign your bond, they must do so by the close of business on

16    Wednesday.  If they don't, that will be considered a violation

17    of your conditions, and I'm going to issue a warrant to have

18    you brought back in as you've not met my conditions.

19              Any concerns about whether they can be accomplished

20    by Wednesday?

21              DEFENDANT RODRIGUEZ:  No, Your Honor.  No, we'll get

22    it done.

23              THE COURT:  All right.  All right.  Can we proceed to

24    arraignment?

25              MR. FITZGERALD:  Yes, Your Honor.

                      UNITED STATES DISTRICT COURT
```

 1              THE COURT:  All right.  Mr. Fitzgerald, as to Edwar

 2    Rodriguez?

 3              MR. FITZGERALD:  Your Honor, at this time,

 4    Mr. Rodriguez would waive formal reading of the indictment,

 5    enter a plea of not guilty to Count 1, and request

 6    participation in Rule 16 discovery.

 7              THE COURT:  All right.  Mr. Louderback, as to

 8    Mr. Christian Santiago Rondon?

 9              MR. LOUDERBACK:  He will also waive formal reading of

10    the indictment, enter a not-guilty to Count 1, and we will

11    participate in Rule 16 discovery.

12              THE COURT:  And, lastly, Mr. Ciaravella, as to

13    Mr. Victor Santiago Rondon?

14              MR. CIARAVELLA:  Your Honor, Mr. Santiago Rondon

15    would waive formal reading, enter not-guilty plea to the

16    indictment, and request to participate in Rule 16 discovery.

17              THE COURT:  For the record, is the government

18    requesting reciprocal discovery?

19              MR. GORDON:  Yes, please, Your Honor.

20              THE COURT:  Pleas of not guilty will be entered for

21    each of the three defendants as to the sole charge of the

22    indictment.  The matter is before Judge Honeywell for a status

23    conference on February 18th at 9:30 in the morning, and the

24    case will be scheduled for the March trial term, which begins

25    on March 2nd of this year, and Judge Wilson will enter the

                          UNITED STATES DISTRICT COURT

```
 1    discovery order.

 2            All right.  Anything else we need to take up at this

 3    time?

 4            MR. GORDON:  No.  Thank you, Your Honor.

 5            THE COURT:  Mr. Fitzgerald?

 6            MR. FITZGERALD:  No, Your Honor.

 7            THE COURT:  Mr. Louderback?

 8            MR. LOUDERBACK:  No, Your Honor.

 9            THE COURT:  Mr. Ciaravella?

10            MR. CIARAVELLA:  No, Your Honor.  Thank you.

11            THE COURT:  All right.  Thank you-all.  I appreciate

12    your patience.  We'll be in recess.

13         (Proceedings concluded at 4:52 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

1        **CERTIFICATE OF REPORTER**

2  STATE OF FLORIDA

3  COUNTY OF HILLSBOROUGH

4          I, Rebekah M. Lockwood, RDR, CRR, do hereby certify

5  that I was authorized to and did stenographically transcribe

6  the foregoing electronically recorded proceedings; and that the

7  foregoing pages constitute a true and complete computer-aided

8  transcription of my stenographic notes to the best of my

9  knowledge, skill, and ability.

10      I further certify that I am not a relative, employee,

11 attorney, or counsel of any of the parties, nor am I a relative

12 or employee of any of the parties' attorney or counsel

13 connected with the action, nor am I financially interested in

14 the action.

15      IN WITNESS WHEREOF, I have hereunto set my hand at Tampa,

16 Hillsborough County, Florida, on this 15th day of June 2020.

17

18

19

20                                    _____
                                      REBEKAH M. LOCKWOOD, RDR, CRR
21                                    Official Court Reporter
                                      United States District Court
22                                    Middle District of Florida

23

24

25